**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SECURITY VALIDATION LLC, <br><br> Plaintiff, <br><br> v. <br><br> BOSTON HELP DESK INC. and ALBERT C. NAJIMY, <br><br> Defendants. | Civ. No. 23-00086 (CCC) <br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

This matter comes before the Court upon defendants Boston HelpDesk Inc.'s[1] ("BHD") and Albert C. Najimy's ("Najimy") (collectively, "Defendants") motion to dismiss plaintiff Security Validation LLC's ("Plaintiff") first amended complaint (ECF No. 7, "FAC") for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 10. Plaintiff filed a response in opposition (ECF No. 21, "Opp."), and Defendants replied (ECF No. 32, "Reply"). The Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

**WHEREAS** the instant dispute arises out of a joint venture endeavor between Plaintiff and BHD. Plaintiff, a New Jersey limited liability company, offers information technology and cybersecurity services to hospitality organizations across the country. FAC ¶¶ 2, 8. Plaintiff has two individual members: David Durko ("Durko"), domiciled in Arizona, and Dawn Bruno

---

[1] Boston HelpDesk Inc. is incorrectly pleaded as Boston Help Desk Inc. ECF No. 10-3 ("Def. Br.") at 1 n.1.

("Bruno"), domiciled in New Jersey. *Id.* ¶¶ 2–4. BHD, a Massachusetts corporation with a principal place of business in Boston, offers managed technology support and services to local small to mid-sized organizations. *Id.* ¶¶ 5, 9. Najimy is a principal and Director of BHD. *Id.* ¶ 6. Defendants note that BHD is neither registered to do business in New Jersey nor maintains any addresses, bank accounts, mailboxes, or customers in the state. Def. Br. at 3. Likewise, Najimy has never lived or owned property in New Jersey. *Id.*; and

      **WHEREAS** Plaintiff alleges that in 2019, Highgate Hotels ("Highgate"), a client of both Plaintiff and BHD, selected Plaintiff as its sole information technology services vendor in an effort to consolidate providers for all of its properties. FAC ¶¶ 10–14. Plaintiff encouraged Highgate to also retain BHD for managed technology support, but Highgate desired a larger vendor. *Id.* ¶ 15. Accordingly, Plaintiff "conceived of a new joint venture called 'US Service Desk' ["USSD"] that [it] and BHD could own and operate jointly" to allow the organizations to effectively service mutual clients such as Highgate. *Id.* ¶ 16. Plaintiff explains that Defendants "responded favorably and agreed to move forward with the new business." *Id.* ¶ 17; and

      **WHERESAS** Plaintiff asserts that in October 2020, the parties proceeded to secure the domain name 'usservicedesk.com' and exchange a document outlining the joint venture business terms and conditions. *Id.* ¶¶ 19–20. The sides then purportedly discussed a non-disclosure agreement (though one was never executed), exchanged a draft joint venture agreement (which Defendants contend was never executed), and agreed upon a logo for the USSD business, at which point Defendants started using the USSD name and logo in their email signature blocs. *Id.* ¶¶ 21–25; Def. Br. at 4; Opp. at 4–5. After Plaintiff developed an inventory of Highgate properties at which the joint venture could operate, BHD drafted and submitted a proposal to Highgate for USSD's services, which Highgate rejected based on price. FAC ¶¶ 26–28. Nevertheless, the

USSD business proceeded to launch when the Scottsdale Plaza in Arizona accepted Plaintiff's proposal for USSD to provide managed technology support and services. *Id.* ¶¶ 29–31. Durko signed the contract with the Scottsdale Plaza on Plaintiff's behalf, and Defendants purportedly also executed an agreement with the hotel, at which point Plaintiff began recruiting new employees for the joint venture. *Id.* ¶¶ 31–33. Plaintiff and Defendants discussed potential new hires and agreed to employ Robert Lincoln ("Lincoln"), who "was hired by BHD, on behalf of 'US Service Desk,'" for purposes of the Scottsdale Plaza contract. *Id.* ¶¶ 34–35; and

**WHEREAS** Plaintiff contends that through the filing of the instant amended complaint, it has continued to market USSD's offerings, including to Highgate, who is expected to onboard USSD services at its Heavlin portfolio, and communicates with Defendants about new business opportunities. *Id.* ¶¶ 37–39. Plaintiff also believes that BHD has advertised USSD to clients beyond the hospitality sector during this period. *Id.* ¶ 41. Plaintiff, however, alleges that in October 2022, it became aware that a new company called "US Service Desk" was advertising technology services on social media using the same logo and business model previously agreed upon by the parties. *Id.* ¶ 42. Plaintiff further discovered that, without any discussion or its permission, the "usservicedesk.com" website was live and the contact and identifying information on the website matched that of BHD's. *Id.* ¶ 43. Plaintiff contends that around the same time, Lincoln informed it that BHD "intended to 'rebrand' its entire business to 'US Service Desk' effective January 1, 2023," an allegation to which Defendants did not respond upon Plaintiff's inquiry. *Id.* ¶¶ 44–46; and

**WHEREAS** accordingly, Plaintiff believes that BHD, through the USSD brand, is providing managed technology support and services to clients to Plaintiff's exclusion despite the purported agreement to enter a joint venture and mutually operate USSD. *Id.* ¶ 47. Plaintiff's

amended complaint asserts claims for "Breach of Fiduciary Duty / Self-Dealing / Diversion of Corporate Opportunities / Unfair Competition" (Count One); Breach of New Jersey's Uniform Partnership Act, N.J.S.A. 42:1A-1 *et seq.* (Count Two); Declaratory Judgment (Count Three); Breach of Contract (Count Four); Conversion (Count Five); Unjust Enrichment (Count Six); Misappropriation and Misuse of Confidential Information (Count Seven); and Access to Books and Records (Count Eight). *See* FAC; and

**WHEREAS** Defendants move, in part, to dismiss for this Court's lack of personal jurisdiction over them pursuant to Federal Rule of Civil Procedure 12(b)(2).[2] Def. Br. at 6. The Court must grant a defendant's motion to dismiss under Rule 12(b)(2) if the Court does not maintain personal jurisdiction over the defendant. Once a defendant challenges personal jurisdiction in this manner, the burden of establishing personal jurisdiction shifts to the plaintiff. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citations omitted). To defeat a defendant's 12(b)(2) motion where the defendant has produced an affidavit or other competent evidence that asserts facts contrary to the jurisdictional allegations of the complaint, the burden is on the plaintiff to make a prima facie showing "through sworn affidavits or other competent evidence" that the jurisdictional facts exist. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984). A federal court typically must conduct a two-step analysis to ascertain whether personal jurisdiction exists: first, whether the forum state's long arm statute permits jurisdiction and second, whether assertion of personal jurisdiction violates due process. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998); *Vetrotex Certaineed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). New Jersey's long arm statute

---

[2] Defendants also move pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. However, because the Court does not have personal jurisdiction over the Defendants, it need not address the merits of this argument.

4

permits the exercise of personal jurisdiction "to the uttermost limits permitted by the United States Constitution," and thus, the typical two-part inquiry may be collapsed into a single step addressing due process requirements. *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 2002); and

**WHEREAS** Defendants argue, and Plaintiff concedes, that neither BHD nor Najimy is subject to general personal jurisdiction in New Jersey. Def. Br. at 11–12; Opp. at 10 ("[Plaintiff] acknowledges that the BHD Defendants lack[] the continuous and systematic contacts to satisfy the requirements for general jurisdiction." (internal quotations omitted)). Therefore, the Court considers only whether it has specific personal jurisdiction over Defendants. To establish a prima facie case of specific personal jurisdiction, a plaintiff must show: (1) a defendant "purposefully directed [its] activities at [New Jersey];" (2) the plaintiff's claims "arise out of or relate to at least one of those activities," and (3) "the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotations and citations omitted). Under the first prong of this analysis, Plaintiff must establish that Defendant had sufficient minimum contacts with New Jersey. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). For minimum forum contacts to be constitutionally sufficient, "the defendant's suit-related conduct must create a substantial connection with the forum State" which the "'defendant *himself*' creates." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); and

**WHEREAS** a court's inquiry into specific personal jurisdiction upon a motion to dismiss a complaint asserting various types of claims, including breach of contract and intentional torts, is carried out through claim-specific analyses. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). The Court first considers Plaintiff's breach of contract claim. "[A]n individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in

the other party's home forum." *Burger King Corp.*, 471 U.S. at 478.  Instead, "in contract claims[,] [the Third Circuit] analyze[s] the totality of the circumstances surrounding a contract to determine whether the exercise of jurisdiction over the defendant is proper." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 99 (3d Cir. 2004) (citing *Remick*, 238 F.3d at 255–56).  "[T]he Court must consider the negotiations between the parties, contemplated future consequences, and the parties' dealings." *Michael Williams Consulting LLC v. Wyckoff Heights Med. Ctr.*, No. CIV.A.09-4328 (PGS), 2010 WL 2674425, at *6 (D.N.J. June 30, 2010); and

**WHEREAS** Defendants argue that Plaintiff fails to establish that either BHD's or Najimy's "contacts with New Jersey were instrumental in the formation, performance, or alleged breach of the contract at issue." Def. Br. at 17.  Plaintiff rejects Defendants' contentions, arguing that Defendants' communications to Plaintiff in New Jersey, including "phone calls and electronic transmissions" confirming their agreement to the joint venture, render personal jurisdiction proper. Opp. at 15.  The Court also considers the affidavit attached to Plaintiff's opposition brief from Bruno, its President (ECF No. 21-1, "Bruno Decl.").  Bruno's declaration notes, in relevant part, that Plaintiff and Defendants "exchanged a document outlining the terms of the joint venture that [Plaintiff] prepared and transmitted to the BHD Defendants from its New Jersey offices" and that the parties discussed from "their respective offices," "among other things, entering a mutual [n]on-[d]isclosure [a]greement," which did not come to fruition. *Id.* ¶¶ 18–19; and

**WHEREAS** "[i]nformational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]." *Siegmeister v. Benford*, No. CV 15-07099, 2017 WL 2399573, at *3 (D.N.J. June 1, 2017) (quoting *Vetrotex Certainteed Corp.*, 75 F.3d at 152); *see IMO Indus., Inc.*, 155 F.3d at 259 n.3 ("The weight of authority among the courts

6

of appeal is that minimal communication between the defendant and the plaintiff in the forum state, without more, will not subject the defendant to the jurisdiction of that state's court system."); *Machulsky v. Hall*, 210 F. Supp. 2d 531, 539 (D.N.J. 2002) ("[M]inimal correspondence alone will not satisfy minimum contacts." (quoting *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 729 (E.D. Pa. 1999))).  Neither Plaintiff's amended complaint nor Bruno's declaration indicate that, in connection with the purported joint venture, Defendants visited New Jersey, transferred funds to the state, solicited business within its borders, hired agents in the forum, performed or planned to perform any part of the agreement here, or otherwise targeted the forum deliberately. *See Michael Williams Consulting LLC*, 2010 WL 2674425, at *5 (collecting cases identifying conduct that renders specific personal jurisdiction suitable).  Indeed, Bruno confirms that *Plaintiff*, not BHD, initiated discussions around the new joint venture and that *Plaintiff* prepared and transmitted an initial document outlining the terms of the joint venture to BHD.  Bruno Decl. ¶¶ 12, 18.  Thus, the communications noted by Plaintiff alone are insufficient to render specific personal jurisdiction for Plaintiff's breach of contract claim appropriate in this forum.  *See Siegmeister*, 2017 WL 2399573, at *3 (finding no specific personal jurisdiction over breach of contract claim regarding purchase of diamonds even where "[p]laintiff allege[d] that [d]efendants described the diamonds for sale in a series of correspondence, telephone calls, emails, and a contract of sale" directed to New Jersey plaintiff (internal quotation omitted)); and

**WHEREAS** moreover, though Bruno notes that Plaintiff and BHD had previously developed a "strong working relationship" while independently providing services to common clients, *id.* ¶¶ 6–7, 10, neither her declaration nor the amended complaint provides any indication that Defendants had contacts with New Jersey in connection with that relationship.  Considering the totality of the circumstances, such contacts do not indicate that "[D]efendant[s] purposefully

avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp.*, 471 U.S. at 475). Thus, the Court finds that it does not have specific personal jurisdiction over BHD or Najimy with respect to the breach of contract claim as pleaded; and

**WHEREAS** personal jurisdiction for tortious conduct is examined under the *Calder* "Effects Test," which permits a court to exercise specific personal jurisdiction over an out-of-state defendant's out-of-state conduct where: "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Remick*, 238 F.3d at 258 (citing *IMO Indus., Inc.*, 155 F.3d at 265–66).[3] Critically, the Effects Test "prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at the state." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Plaintiffs allege that Defendants engaged in tortious conduct that had negative economic effects on Plaintiff's business in New Jersey. Defendants, however, contend that the alleged conduct does not satisfy the *Calder* requirement that Defendants expressly targeted New Jersey. *See* Def. Br. at 15; Reply at 6–7. In other words, Defendants contend the mere fact that Plaintiff is domiciled in New Jersey and felt the harm here is insufficient to render specific personal

---

[3] The parties appear to agree that the remainder of Plaintiff's claims fall within the realm of the Effects Test. In any event, when "most of the claims arise out of the same set of facts and are tightly interwoven, an individualized discussion of each claim is unnecessary, as the jurisdictional analysis is the same." *Blystra v. Fiber Tech Grp., Inc.*, No. 00-4593, 2005 WL 2807361, at *4 (D.N.J. Oct. 25, 2005).

jurisdiction proper.  Def. Br. at 15; and

**WHEREAS** the Court agrees that Plaintiff's amended complaint as pleaded insufficiently alleges that Defendants "expressly targeted" *New Jersey* with their allegedly tortious conduct.  As outlined above, Plaintiff contends that Defendants, despite expressing intent to enter into a joint venture, purportedly began unilaterally operating USSD, thus *inter alia* diverting corporate opportunities, usurping clients, and misappropriating confidential information.  FAC ¶¶ 42–52.  However, none of Plaintiff's allegations specifically contend that such conduct targeted New Jersey.  For example, Plaintiff does not identify any specific potential or existing client of Plaintiff's located in New Jersey with whom Defendants interfered.  Indeed, Najimy confirms in his declaration that BHD does not have any New Jersey-based clients and/or customers (ECF No. 10-1, "Najimy Decl." ¶ 11) and, to the extent Defendants interfered with Plaintiff's relationship with Highgate, Defendant explains that is a Delaware corporation with a New York principal place of business (Def. Br. at 15).  Further, Plaintiff does not indicate that Defendants carried out any actions in New Jersey or otherwise involved the state in furtherance of operating USSD in the alleged unfair and/or improper manner.  Thus, to find that Defendants' conduct targeted New Jersey merely based on the fact that Plaintiff is located here would conflate the second and third prong of the Effects Test.  *See Intellect Design Arena, Inc. v. DataCubes Inc.*, No. CV1912184ESSCM, 2020 WL 2832568, at *5 (D.N.J. June 1, 2020) ("Targeting Plaintiff, which is located in New Jersey, is not the same as targeting New Jersey.  A plaintiff alleging an intentional tort 'must show additional facts connecting the defendant to the forum state other than the plaintiff's location at the time of the' tortious conduct." (quoting *Marten*, 499 F.3d at 299)).

9

Therefore, the Court finds that it does not have specific personal jurisdiction over BHD or Najimy with respect to the remaining claims as pleaded.[4]

**Accordingly, IT IS**, on this 20th day of September, 2023,

**ORDERED** that the Court grants Defendants' motion to dismiss for lack of personal jurisdiction (ECF No. 10) and dismisses Plaintiff's amended complaint (ECF No. 7) without prejudice; and it is further

**ORDERD** that to the extent Plaintiff is able to cure the pleading deficiencies identified in the Court's Opinion, it shall have thirty (30) days from the date of this Order to file a second amended complaint. Insofar as Plaintiff submits a further amended complaint, it shall also provide a form of the amended complaint that indicates in what respect it differs from the original complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2); and it is further

**ORDERED** that the Clerk of the Court shall close this case. The matter shall be reopened in the event that Plaintiff timely files a further amended complaint.

**SO ORDERED.**

---

[4] Plaintiff acknowledges that application of the "Effects Test" "is appropriate to the instant action," Opp. at 12, but fails to adequately analyze the allegations under that test. Instead, Plaintiff relies heavily on *Zahl v. Eastland*, 465 N.J. Super. 79 (App. Div. 2020). *See* Opp. at 12–14. Plaintiff's argument is unavailing. As an initial matter, the Appellate Division of the New Jersey Supreme Court's finding of specific personal jurisdiction in *Zahl* did not involve an analysis under the Effects Test utilized by federal courts to examine jurisdiction for tortious conduct claims. *See generally Zahl v. Eastland*, 465 N.J. Super. 79. Additionally, it was narrowly focused on New Jersey state courts' personal jurisdiction over out-of-state attorneys. *See generally id.* In any event, the facts of *Zahl* are readily distinguishable from those pleaded in the instant action. There, a Mississippi attorney, sued for legal malpractice and excessive billing, "could have reasonably anticipated being haled into the state court in New Jersey" in connection with any disputes over his representation of a New Jersey client in New Jersey federal court. *Id.* at 101–02. The attorney traveled to New Jersey in connection with the representation, *id.* at 87, prepared numerous documents filed on the docket, *id.* at 89, sought pro hac vice admission, and coordinated with local counsel here, *id.* at 95. Such conduct certainly targeted New Jersey as a forum as to satisfy specific personal jurisdiction to a degree that Defendants' alleged conduct does not.

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**